UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| Amica Mutual Insurance Company,<br>    *Plaintiff*,<br><br>v.<br><br>PV Holding Corp d/b/a Budget Rent-A-Car,<br>    *Defendant*. | Case No. 3:20-cv-01407 (SVN)<br><br>February 14, 2022 |

### RULING AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Sarala V. Nagala, United States District Judge.

Plaintiff Amica Mutual Insurance Company ("Amica") brings this action to recover the value of an insurance settlement it paid on behalf of its insured, Michael Kitain, after he was involved in a car accident in a vehicle he rented from PV Holding Corp ("Budget"). Amica claims that the accident was caused not by Michael Kitain's negligence, but by the allegedly negligent maintenance of the vehicle that Budget supplied to Michael Kitain. The Complaint consists of six counts: (1) gross negligence; (2) common law indemnification; (3) equitable contribution; (4) subrogation; (5) equitable subrogation; and (6) violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

Budget's Motion for Judgment on the Pleadings[1] (the "Motion") claims that each of the six counts fails to state a claim upon which relief can be granted and must be dismissed. Conversely, Amica contends that each claim is adequately pleaded and should proceed to discovery.

---

[1] In its opposition, Amica notes that, although Budget's Motion seeks relief under Rule 12(b)(6) and Rule 12(c), it is improper to move for relief under Rule 12(b)(6), as the time to make such a motion has passed. *See* ECF No. 15 at 1. Regardless of whether a motion under Rule 12(b)(6) can be brought at this stage in the case, the defense of failure to state a claim upon which relief can be granted is not waived by a party's failing to raise it in a pre-answer motion, and there is no dispute that the Motion for Judgment on the Pleadings is timely brought. Therefore, the Court will treat this Motion as one having been timely brought under Rule 12(c) based on Amica's purported failure to state a claim upon which relief can be granted.

For the reasons described below, the Court agrees with Budget on all counts. The Complaint is thus DISMISSED in its entirety.

I.      FACTUAL BACKGROUND

For purposes of a motion for judgment on the pleadings, the Court accepts as true the allegations in Amica's Complaint. *Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir. 1996). The Complaint sets forth the following allegations. On or around May 26, 2019, Michael Kitain rented a 2018 GMC Yukon XL (the "Vehicle") from Budget in Michigan. ECF No. 1 ¶ 9. Michael Kitain, his son Andrew Kitain, and his wife Ilona Kitain (collectively, the "Kitain Family") intended to use the car to drive from Michigan to their home in Stamford, Connecticut. *Id.* ¶ 11. On or around May 26, 2019, with Michael Kitain driving, the Kitain Family was involved in a single car accident on U.S. Highway 80 in West Buffalo Township, Pennsylvania. *Id.* ¶¶ 11, 14. It had been raining moderately at the location of the accident. *Id.* ¶ 13. Michael Kitain, despite allegedly driving in a safe manner in an area that did not have heavy traffic, while neither speeding nor swerving, lost control of his vehicle, causing it to flip and roll over. *Id.* ¶¶ 14-15. Ilona Kitain and Andrew Kitain, the passengers in the vehicle, were injured in the accident. *Id.* ¶¶ 12, 18, 19, 21. At the time of this accident, Michael Kitain had a personal auto insurance policy issued by Amica. *Id.* ¶ 6.

Following the accident, Ilona Kitain and Andrew Kitain filed claims with Amica for their bodily injuries, based on Michael Kitain's insurance policy. ECF No. 1 ¶ 22. What is implicitly suggested in the Complaint, but not explicitly stated, is that Ilona and Andrew Kitain sought to hold Michael Kitain liable for their injuries and that Michael Kitain then called upon Amica, as his insurance company, to cover his wife's and son's bodily injury expenses. After an investigation, and presumably based on Michael Kitain's potential liability for the injuries, Amica

settled both claims for a combined amount of $257,500. *Id.* ¶¶ 23, 24, 27, 28. Budget allowed an inspection of the Vehicle approximately five months after the accident occurred, but did not otherwise participate in the settlement or negotiations with Ilona Kitain or Andrew Kitain. *Id.* ¶¶ 25, 29.

Amica filed the current action to recover from Budget the $257,500 paid to Ilona Kitain and Andrew Kitain. The opening line of its Complaint indicates that it is proceeding "individually and as a subrogee of Michael Kitain, Ilona Kitain, and Andrew Kitain." ECF No. 1 at 1. Later, however, its Complaint labels Ilona Kitain and Andrew Kitain as "subrogors." *Id.* ¶¶ 7-8. As discussed further below, in its response to Budget's Motion, Amica claims that it is proceeding in this action as a subrogee of Michael Kitain on all of its claims.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When examining a motion for judgment on the pleadings, the Court will "employ [ ] the same . . . standard applicable to dismissals pursuant to [Rule] 12(b)(6)." *L-7 Designs, Inc. v. Old Navy*, *LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Thus, the Court "will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009). While a plaintiff is not required to outline every fact supporting his position in the complaint, the "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Further, "on a Rule 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of

which the court can take judicial notice for the factual background of the case. The court's consideration may include 'any written instrument attached to [the complaint] as an exhibit, . . . materials incorporated in it by reference, . . . and documents, that although not incorporated by reference, are 'integral' to the complaint.'" *Stepney, LLC v. Nautilus Ins. Co.*, No. 3:19CV720 (AWT), 2020 WL 7630791, at *2 (D. Conn. Dec. 22, 2020) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

Amica's Complaint against Budget contains six counts alleging: (1) gross negligence; (2) common law indemnification; (3) equitable contribution; (4) subrogation; (5) equitable subrogation; and (6) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The Court will address each of Amica's six claims in turn.

### III.     GROSS NEGLIGENCE/NEGLIGENCE

Amica's first claim for relief is labeled "gross negligence." Budget is correct in arguing that gross negligence is not a recognized tort in Connecticut. ECF No. 15 at 2; *see Hanks v. Powder Ridge Restaurant Corp.*, 885 A.2d 734, 747–48 (Conn. 2005) ("Connecticut does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis for liability."). Nevertheless, if Amica has adequately stated a claim for negligence, mislabeling it as gross negligence does not prevent the claim from proceeding. *See Boutillier v. Hartford Pub. Schs.*, No. 3:13CV1303 WWE, 2014 WL 4794527, at *2 (D. Conn. Sept. 25, 2014) (allowing mislabeled constructive discharge claim, for which there is no independent tort in Connecticut, to proceed as wrongful termination claim).

As an initial matter, it is unclear from the face of the Complaint whether Amica brings its gross negligence count on behalf of itself or as subrogee of Michael Kitain. *See* ECF No. 1 at ¶¶ 30-35. Amica contends that paragraph six of its Complaint establishes that it is bringing the suit

as a subrogee of Michael Kitain, but that paragraph simply states: "At all relevant times, Amica issued to Michael Kitain a Personal Auto Policy, Policy Number 99100625TH." ECF No. 1 ¶ 6. Paragraph six is thus insufficient to establish that Amica is proceeding as subrogee of Michael Kitain.

That said, Amica attached to its opposition brief a copy of the insurance policy between Amica and Michael Kitain, which provides, in relevant part: "If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right." *See* ECF No. 15-1 at 23 (page twelve of insurance contract). The Court assumes that it can consider this document in ruling on this Motion, as it appears to be "integral" to the Complaint. *See Sira*, 380 F.3d at 67.[2] The policy does appear to provide Amica the right to stand in Michael Kitain's shoes as his subrogee.

Regardless of whether the negligence claim is brought by Amica individually or as a subrogee to Michael Kitain, however, the count fails. Under Connecticut law, "the essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Murdock v. Croughwell*, 848 A.2d 363, 367 (Conn. 2004).[3] To the extent Amica brings this claim in its individual capacity directly against Budget, it has failed to allege a cognizable duty owed to it. Specifically, Amica alleges only that Budget "had a duty to its customers to maintain the safety of the vehicles it offered to consumers." ECF No. 1 ¶ 31. It is undisputed that Amica was not a customer of Budget. In fact, it is undisputed that Amica had

---

[2] Amica also claims that the insurance policy is incorporated by reference into the Complaint, despite the fact that the Complaint does not include the words "incorporated by reference." The Court does not opine on the question of whether the insurance policy was incorporated by reference into the Complaint, given its conclusion that the policy was "integral" to the Complaint.

[3] In their briefing, the parties assume Connecticut law applies for each claim in this case, except for the allegations brought under CUTPA. The Court will thus use Connecticut law to assess Counts One through Five, and will engage in a choice of law analysis for the CUTPA claim, as noted below. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (Where "the parties' briefs assume that [a specific state's] law controls, [] such implied consent . . . is sufficient to establish choice of law.").

no individual relationship with Budget at all. Thus, the Complaint fails to allege a basis for any duty Budget owed to Amica and thus fails to state a negligence claim against Budget.

Moreover, the Court fails to see how Budget could possibly have had a duty to Amica. Under Connecticut law, "unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." *Frankovitch v. Burton*, 440 A.2d 254, 259 (Conn. 1981). Here, it is undisputed that Amica and Budget had no relationship prior to this lawsuit. Therefore, Amica cannot allege that Budget owed it any duty, and to the extent Amica attempts to bring a claim of negligence directly against Budget, this claim cannot succeed. *See RK Constructors, Inc. v. Fusco Corp.*, 650 A.2d 153, 155 (Conn. 1994) ("If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant.").

To the extent Amica brings its negligence claim as subrogee of Michael Kitain, as it contends, Amica nonetheless fails to state a claim upon which relief can be granted. It is well settled and important to note that an "insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses." *Wasko v. Manella*, 865 A.2d 1223, 1228 (Conn. 2005). In the present case, Michael Kitain is the only insured party of Amica. There is no allegation that Ilona and Andrew Kitain were insured by Amica at the time of the accident. Therefore, Amica assumes the rights of Michael and Michael alone. And any defense that Budget may have against Michael Kitain "is good against the insurer subrogated to the rights" of Michael Kitain. *See Orselet v. DeMatteo*, 539 A.2d 95, 98 (Conn. 1988).

Amica's claim, brought as subrogee of Michael Kitain, fails because Michael Kitain has suffered no cognizable damages. Michael Kitain suffered no injuries in the accident. Rather, Amica advances a convoluted theory that it was forced to pay settlements to Ilona and Andrew

Kitain, and those payments constitute Michael Kitain's damages for purposes of the negligence claim. ECF No. 1 ¶¶ 34-35. This argument fails, as Amica has pointed to no case law, and the Court has found none, holding that an insurance settlement paid by an insurance company based on an insurance contract can be considered an injury to the *insured* for the purpose of asserting a negligence claim against a third party.

At oral argument, Amica conceded that its motive for bringing the negligence cause of action in this case was to determine who between Michael Kitain and Budget was in fact negligent and apportion the corresponding percentage of responsibility. A cause of action for negligence is not the appropriate way to accomplish this objective under these circumstances, however, and Amica's claim for negligence must be DISMISSED.

## IV.     INDEMNIFICATION

Amica next seeks reimbursement through a claim for indemnification. Again, contrary to the plain language of the Complaint, Amica claims to be standing in the shoes of Michael Kitain, as his subrogee, for purposes of this claim.

The classic indemnification case under Connecticut law involves an "implied obligation of indemnity on a tortfeasor whose *active* negligence is primarily responsible for a plaintiff's injuries, thus superseding the indemnitee's *passive* negligence." *Smith v. New Haven*, 779 A.2d 104, 110 (Conn. 2001). In order to plead a claim for indemnification, the "out-of-pocket defendant must show that: (1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries []; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant [seeking reimbursement] did not know of the other party's negligence, had no reason to anticipate it, and

reasonably could rely on the other party not to be negligent." *Id.* at 110–11. Thus, an indemnification claim presupposes negligence, albeit passive, on the part of the defendant who had to pay the injured party's damages.

In order to proceed as a subrogee of Michael Kitain on an indemnification claim, then, Amica must acknowledge that Michael Kitain was negligent. Amica's Complaint, however, repeatedly and strenuously eschews any notion that Michael Kitain was at all negligent in his operation of the Vehicle. Rather, Amica claims that Budget's negligence was the sole cause of the accident. *See, e.g.*, ECF No. 1 ¶¶ 14, 32, 34, 39. Under such circumstances, an indemnification claim cannot stand.

Amica also has not properly pleaded that Budget, the party against whom indemnification is sought, had "exclusive control of the situation." *See Smith*, 779 A.2d at 111. This pleading requirement turns on the definition of the "situation." Exclusive control of the situation has been described as "exclusive control over the dangerous condition that gives rise to the accident." *Skuzinski v. Bouchard Fuels, Inc.*, 694 A.2d 788, 794 (Conn. 1997). Amica claims that Budget had "exclusive control of the maintenance and care of the Vehicle," ECF No. 1 at ¶ 38, and further claims that Michael Kitain was driving "in a safe manner, neither speeding nor swerving, and was not in heavy traffic." *Id.* at ¶ 14. But Amica also notes that it was "raining moderately" at the location of the accident. *Id.* at ¶ 13. Therefore, "the situation" at issue here is the Kitain Family driving in the rain that fateful May day in 2019. *See Pellecchia v. Conn. Light & Power Co.*, 57 A.3d 803, 808 (Conn. App. Ct. 2012) (the "situation," for purposes of an indemnification claim, is "the condition of danger from which a foreseeable risk of harm to the plaintiff[]" arises). Budget certainly did not have exclusive control of that situation.

*Skuzinski* is especially instructive in this matter. There, the plaintiff in the underlying action alleged that a business failed to shovel snow from its sidewalk, requiring the plaintiff to walk on the road. 694 A.2d at 789–90. While walking on the road, the plaintiff was struck by a truck. *Id.* The truck's owner filed a complaint for indemnification against the business, claiming that through its failure to remove the snow, the business became partially responsible for the plaintiff's injuries. *Id.* The Connecticut Supreme Court noted that the question of whether any reasonable juror could find that the third party defendant (in that case, the business) had "exclusive control of the situation" was a question of law. 694 A.2d at 794. It further held that exclusive control over the sidewalk was not the same as "exclusive control over 'the situation,' that is to say over an accident caused by an unrelated party and occurring in the adjoining public roadway." *Id.* Similarly, here, even if Budget had exclusive control over the maintenance and care of the Vehicle, it did not have exclusive control over the accident occurring on a rainy Pennsylvania highway on May 26, 2019.

Therefore, Amica has failed to adequately plead common law indemnification and Count Two must be DISMISSED.

### V.   EQUITABLE CONTRIBUTION

The third claim in Amica's Complaint is for equitable contribution. Contribution claims differ from indemnification claims in that "[c]ontribution is a payment made by each, or by any, of several having a *common interest or liability* of his share in the loss suffered, or in the money necessarily paid by one of the parties in behalf of the others. . . . The right of action for contribution, which is equitable in origin, arises when, as between multiple parties *jointly bound* to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the *common* obligation." *Sec. Ins.*

*Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 123 (Conn. 2003) (second alteration in original) (internal citation omitted). Once again, Amica fails to adequately plead a claim.

Amica again contends that it brings this claim as a subrogee of Michael Kitain. But Michael Kitain is not alleged to be a joint tortfeasor and did not pay out any damages, such that he would be eligible for contribution from any other parties. If, instead, Amica is pursuing this claim on its own behalf, Amica has failed to plead that Budget and Amica are "jointly bound to pay a sum of money." *Sec. Ins. Co. of Hartford*, 826 A.2d at 123. Amica alleges that it paid out an insurance claim made against one of its insureds. Budget has no obligation to contribute to any insurance payout Amica made. Had Michael Kitain and Budget both been sued and found liable for the damages of the injured passengers, we would have a different situation. But that is not the case here, and Amica cannot seek contribution on a debt that Budget was never required to pay. *See Crotta v. Home Depot, Inc.*, 732 A.2d 767, 771 (Conn. 1999) (action for contribution "arises when, as between multiple parties *jointly bound* to pay a sum of money, one party is compelled to pay the entire sum").

Therefore, Amica's claim for equitable contribution must be DISMISSED.

## VI. CONVENTIONAL AND EQUITABLE SUBROGATION

Counts Four and Five both purport to raise claims of subrogation, one arising out of a contractual relationship and the other out of equity. "Conventional subrogation can take effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or any relation to the matter pays the debt of another, and by agreement is entitled to the rights and securities of the creditor so paid." *Wasko v. Manella*, 849 A.2d 777, 781 (Conn. 2004). "By contrast, [t]he right of [legal or equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as

a matter of equity, with or without an agreement to that effect. . . . The object of [legal or equitable] subrogation is the prevention of injustice." *Id.*

As an initial matter, the Court is not certain that subrogation, either conventional or equitable, provides Amica an independent cause of action under the circumstances present here. Rather, as stated above, subrogation allows an insurer to stand in the shoes of its insured and bring a claim instead of the insured. *See Wasko*, 865 A.2d at 783. Were subrogation cognizable as an independent cause of action, the insurer would inherently be granted more rights than the insured because an insured himself or herself could not bring a claim for subrogation. Moreover, where insurers invoke the doctrine of subrogation, there are typically independent claims at issue. *See, e.g., id.* at 780 (negligence claim); *Pac. Ins. Co., Ltd. v. Champion Steel, LLC*, 146 A.3d 975, 978 (Conn. 2016) (same). In other words, subrogation is a theory that allows a party to assert a cause of action it otherwise could not; under the circumstances of this case, it is not clear that subrogation can be a freestanding cause of action in and of itself.

Regardless, the allegations of conventional subrogation made in Count Four, to the extent they are brought by Amica as a subrogee of Michael Kitain under Amica's insurance contract with him, are substantially the same as the allegations made in Count One. *Compare* ECF No. 1 ¶¶ 30–35, *with id.* ¶¶ 54–58. Specifically, Amica alleges that Ilona and Andrew Kitain were injured in a car accident caused by Budget's failure to properly maintain its vehicles. Amica paid damages to Andrew and Ilona as Michael Kitain's insurer and now seeks to recover those damages from Budget. As the claim for subrogation in Count Four in essence restates the claim in Count One, it fails for the same reasons discussed above.

At oral argument, Amica claimed it was bringing Count Five, for equitable subrogation, on behalf of Michael Kitain as well. In that event, Count Five would be unnecessary because there is

an insurance contract providing for a right of subrogation, and no equitable subrogation need be pursued. But Count Five is further confused by Amica's allegation that Ilona Kitain and Andrew Kitain "assigned their rights to pursue claims against" Budget to Amica "[a]s part of the settlement of their claims." ECF No. 1 ¶ 63. Amica has not elaborated on the terms of any such contract of assignment. Even if it had, presumably the appropriate method of subrogation would be conventional subrogation under a contract between subrogor and subrogee, rather than equitable subrogation. Accordingly, Count Five fails as well.

Budget also argues that Count Five, as framed in the Complaint, appears to be an impermissible assignment of Ilona and Andrew Kitain's personal injury claims to Amica. Budget may well be correct. *See Dodd v. Middlesex Mut. Assur. Co.*, 698 A.2d 859, 864 (1997) (noting that "few legal principles are as well settled, and as universally agreed upon, as the rule that the common law does not permit assignment of causes of action to recover for personal injuries"). Given its holdings above, however, the Court does not reach this issue.

VII.     **CONNECTICUT UNFAIR TRADE PRACTICES ACT**

CUTPA allows "any person who suffers any ascertainable loss of money or property" through "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to bring a cause of action to recover their actual damages. Conn. Gen. Stat. §§ 42-110b, 42-110g. "Trade" and "commerce" are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a.

An action may be brought under CUTPA even where the plaintiff has alleged only a single instance of improper conduct. *See Johnson Elec. Co. v. Salce Contracting Assocs., Inc.*, 805 A.2d

735, 740 (Conn. App. Ct. 2002). Before turning the merits of the CUTPA claim however, the Court must determine whether the Complaint states a "sufficient nexus" between the allegedly deceptive practices and Connecticut. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 147 (D. Conn. 2014). "While the plain language of CUTPA is directed at unfair competition taking place 'in this state,' Conn. Gen. Stat. § 42-110a(4), courts have held that CUTPA does not require that a violation actually occur in Connecticut" if the allegations are "tied to a form of trade or commerce intimately associated with Connecticut," or, "where Connecticut choice of law principles are applicable, those principles dictate application of Connecticut law." *Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 406 F. Supp. 2d 175, 200 (D. Conn. 2005).

First, the trade or commerce at issue here is not intimately associated with Connecticut. The alleged negligence of Budget took place in Michigan, where the Vehicle was located. Budget is a foreign corporation with its principal place of business in New Jersey. There are no allegations, and no reason for the Court to suspect, that any conversations between the parties took place in Connecticut. At oral argument Amica conceded that none of the alleged unfair business practices took place in Connecticut. Thus, the trade or commerce at issue here is not intimately associated with Connecticut. *See Victor G. Reiling Assocs.*, 406 F. Supp. 2d at 200.

A claim can still be maintained under CUTPA, however, if Connecticut choice of law rules are applicable and require Connecticut law apply to the case. *See Country Club Assocs. v. Shaw's Supermarkets, Inc.*, 643 F. Supp. 2d 243, 253 (D. Conn. 2009). The Court is guided by the principle that "a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002). Therefore, Connecticut choice of law rules apply to the instant matter. Connecticut courts examine choice of law questions for tort actions using "the most significant relationship test" set

forth in the Restatement (Second) of Conflict of Laws, § 145. *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 153 A.3d 574, 584 (Conn. 2016). These same principles apply to claims brought under CUTPA. *Id.* Specifically, § 145(2) of the Second Restatement provides four factors to consider when determining choice of law questions: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.*

The facts of the present case appear as though taken straight from a law school choice of law examination. Amica is a Rhode Island corporation with its principal place of business in Rhode Island. Budget is a Delaware corporation with its principal place of business in New Jersey. Michael Kitain rented a car in Michigan, intending to drive it to his home in Connecticut. But before he arrived, he was involved in an accident in Pennsylvania giving rise to the present action. Initially, the place of injury appears to be Rhode Island, as that is where Amica is located and thus where the economic impact of the allegedly unfair trade practices was felt. *Victor G. Reiling Assocs.*, 406 F. Supp. 2d at 200-01. However, the place where the conduct occurred is either Michigan, where the purported negligent maintenance of the car took place, or New Jersey, where the purported refusal to engage in settlement negotiations occurred. It is not Connecticut. The only connection of either party in this case to Connecticut is occasionally conducting business here. Finally, the parties have no relation to each other outside of the present lawsuit. Therefore, none of the Second Restatement factors favor the application of Connecticut law. The Court need not affirmatively decide which state's law does apply because it is clear Connecticut's does not. Therefore, a CUTPA claim cannot be maintained based on the facts of the present case.

Amica's claim for relief under CUTPA therefore must be DISMISSED.

## VIII. CONCLUSION

For the reasons described herein, Budget's Motion for Judgment on the Pleadings is GRANTED. The Clerk of Court is directed to enter Judgment and close this case.

**SO ORDERED** at Hartford, Connecticut, this 14th day of February, 2022.

                                            */s/ Sarala V. Nagala*
                                            SARALA V. NAGALA
                                            UNITED STATES DISTRICT JUDGE